**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| CURTIS BARON et al., INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | Case No. ________________ |
| PLAINTIFFS, | CLASS ACTION COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| BIO-LAB, INC., et al., | |
| DEFENDANTS. | |

**CLASS ACTION COMPLAINT**

Plaintiffs Yolanda Charissee Baron, Curtis Baron, James George IV, Chelsea Baron, Valeria Walker, Malique D. Walker, Lois Johnson, Terrance D. Hardeman, Timothy Askew III, Calvin Vann Jr., Evelyn Vann and Frederick Garland Sr., individually and on behalf of their minor children Imani Garland and Frederick Garland Jr., Tony Vann, Mary Dean Helms, Rhonda Pruitt, Gregory Lovett, Christine Lovett, Carla Moore, Carl Durgan and Hannah Moore-Harris ("Named Plaintiffs" or "Plaintiffs"), individually and on behalf of all others similarly situated (the "Class", as more fully defined below), by and through their undersigned counsel, bring this class action lawsuit against Defendants Bio-Lab, Inc. ("Bio-Lab"), KIK Custom Products Inc. ("KIK Custom" or "KIK"), KIK International

LLC ("KIK International"), KIK US Holdings LLC ("KIK US Holdings"), (KIK Custom, KIK International, and KIK US Holdings are collectively referred to as "KIK Defendants"), Centerbridge Partners, L.P. ("CB Partners" or "Centerbridge Partners"), Centerbridge Capital Partners III, L.P. ("Centerbridge Capital" or "Centerbridge Fund") (Centerbridge Partners and Centerbridge Capital are collectively referred to as "Centerbridge" or "Centerbridge Defendants") (Bio-Lab, KIK and Centerbridge are collectively referred to as "Defendants"), for damages sustained as the result of a September 29, 2024, fire and resulting release of hazardous and toxic chemicals from Defendants' chemical manufacturing facility located at 1700 Covington Highway, Conyers, GA (the "Conyers Plant"), and allege upon personal knowledge as to their own acts and experiences and, as to all other matters, upon information and belief based upon the investigation of counsel, as follows:

## **INTRODUCTION**

1. On September 29, 2024, a fire ignited at Defendants' chemical plant located at 1700 Covington Highway, Conyers, Georgia (the "Conyers Plant"). The fire created a toxic chemical plume that resulted in evacuation orders, shelter-in-place directives, the closure of Interstate 20, school and business closures, and widespread disruption to residents and businesses throughout Rockdale County

and surrounding communities. This fire and the resulting toxic chemical plume caused needless and preventable personal injuries, property damage, economic losses, and other damages to Named Plaintiffs and members of the proposed Class.

2. Bio-Lab is the swimming pool and spa water care division of KIK Custom, and as such, it manufactures and supplies chemicals and held itself out as conducting business affairs as a conduit of KIK as, "the swimming pool and spa water care division of [KIK], based in Lawrenceville, Georgia."

3. At all relevant times, Defendants owned and operated the Conyers Plant, where pool and spa water chemicals are processed, packaged, and stored, including trichloroisocyanuric acid ("TCCA"), which is used in formulations to kill algae and bacteria in those environments.

4. When TCCA interacts with water, it undergoes an exothermic reaction that releases a considerable amount of heat and decomposes TCCA into chlorine gas and nitrogen trichloride. In large volumes of water, such as in a swimming pool, the heat is dispersed, and the water absorbs both chlorine and nitrogen trichloride. In contrast, when TCCA encounters small amounts of water, a runaway reaction may occur. This uncontrolled reaction can emit toxic and flammable gases into the atmosphere. The heat generated can ignite a fire and potentially result in explosions.

5. The September 29, 2024 Bio-Lab fire did not occur in isolation. Since the Conyers facility opened in 1973, it has experienced several chemical decomposition reactions involving oxidizers that have water-reactive characteristics. Local responders in Rockdale County responded to at least four of these incidents over the years, including but not limited to on April 17, 2004, June 14, 2015, June 4, 2016, and September 14, 2020. The 2004 and 2020 incidents resulted in widespread harm to the surrounding community, including evacuations and the closure of Interstate 20.

6. The Conyers Plant has a troubling history of serious health and safety violations. The fire in September 2024, along with previous incidents, was a predictable outcome of years of careless asset-stripping by KIK and Centerbridge, the companies that control Bio-Lab. Their actions have led to the elimination or prevention of necessary safety measures.

7. Upon information and belief, the September 29, 2024 Bio-Lab Fire was initially extinguished but later reignited, triggering the building's sprinkler system. Water from the sprinkler system came into contact with chemicals in the facility, triggering an explosive chemical reaction. The fire released massive amounts of poisonous smoke containing toxic chemicals, including chlorine, chloramine, bromine, and other chlorine compounds.

8. Following the September 29, 2024 Bio-Lab Fire, emergency responders issued evacuation orders and shelter-in-place directives affecting the communities surrounding the Conyers Plant. Local emergency personnel began conducting door-to-door evacuation and shelter-in-place notifications in neighborhoods adjacent to the Conyers Plant during the morning of September 29, 2024. Local officials reported that approximately 17,000 people were evacuated, and Rockdale County later issued a countywide shelter-in-place order affecting approximately 90,000 residents. Interstate 20 and surrounding roadways were closed because of the incident, and shelter-in-place orders remained in effect during the active emergency response through October 17, 2024.

9. As a direct and proximate result of the September 29, 2024 Bio-Lab Fire and the resulting toxic chemical plume, Named Plaintiffs and members of the proposed Class sustained personal injuries, property damage, business interruption, evacuation and displacement expenses, loss of use and enjoyment of property, economic losses, and other damages. Named Plaintiffs bring this putative class action individually and on behalf of all others similarly situated to recover all damages and other relief authorized by law arising from Defendants' conduct and the September 29, 2024 Bio-Lab Fire and resulting toxic chemical plume.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2). This Court has original jurisdiction because:

(a) The amount in controversy exceeds $5,000,000, exclusive of interest and costs;

(b) The Class consists of more than one hundred members; and

(c) Plaintiffs and many members of the putative Class are citizens of states that are different from the states of which at least one Defendant is a citizen.

11. In addition, Defendants are citizens of states and foreign jurisdictions different from those of Named Plaintiffs and members of the proposed Class. KIK Custom Products, Inc. is a citizen of Delaware and Ontario, Canada. KIK International, LLC is a citizen of Delaware and Ontario, Canada. KIK U.S. Holdings, LLC is a citizen of Delaware and Illinois. Centerbridge Partners, LP is a citizen of Delaware and New York. Centerbridge Capital Partners III, LP is a citizen of Delaware and New York.

12. No exception to jurisdiction under CAFA, including the exceptions outlined in 28 U.S.C. § 1332(d)(4), applies to this action, because at least two state court class actions were filed before the first case was filed in this Court (asserting similar or same claims on behalf of the same or other persons as the current

Named Plaintiffs), and because KIK Defendants and Centerbridge Defendants are "primary defendants" and none are citizens of Georgia for diversity jurisdiction purposes under CAFA.

13. The KIK Defendants are primary defendants because they are directly liable to the proposed class as joint tortfeasors and they have potential exposure to a significant portion of the class and would sustain a substantial loss as compared to other defendants if found liable. *Hunter v. City of Montgomery,* 859 F.3d 1329 (11th Cir. 2017).

14. This Court has jurisdiction over the KIK Defendants because they each operate their chemical enterprise in this District. *See Rodriguez v. KIK Int'l, LLC, et. al.*, Civ. A. No 5:23-cv-01598 (C.D. Cal. 2023).

15. This Court has personal jurisdiction over Centerbridge Defendants because each Defendant has purposefully availed itself of the privilege of conducting business within the State of Georgia and this judicial district. At all relevant times, Centerbridge Defendants owned, operated, managed, controlled, or otherwise exercised authority over the Conyers Plant and KIK and conducted substantial business activities within this District. Named Plaintiffs' claims arise directly from Defendants' conduct in this District.

16. The Centerbridge Defendants' diversion of KIK's assets, revenue, and free cash flow was a material factor in KIK's inability to invest in adequate safety measures at KIK and Bio-Lab facilities.

17. KIK's inability to invest in adequate safety measures at the Conyers Plant was a foreseeable consequence of the Centerbridge Defendants' diversion of KIK's assets, revenue, and free cash flow.

18. At all relevant times, each of the Centerbridge Defendants was aware that Bio-Lab was a major component of KIK's business structure. At all relevant times, each of the Centerbridge Defendants was aware that the Conyers Plant was a major part of Bio-Lab's business operations.

19. At all relevant times, each of the Centerbridge Defendants was aware that their influence, control, and direction of KIK could affect the implementation of adequate safety measures by KIK and Bio-Lab.

20. At all relevant times, each of the Centerbridge Defendants intended for the effects of their influence, control, and direction of KIK and Bio-Lab to be felt disproportionately in Georgia.

21. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Named Plaintiffs' claims occurred in this District, the Conyers Plant and Defendants' operations are located in this District, Defendants' negligent conduct caused injuries to Named Plaintiffs and

members of the proposed Class within this District, and Defendants are subject to personal jurisdiction in this District.

## PARTIES

### I. Plaintiffs

22. Plaintiff Yolanda Charissee Baron is a resident and citizen of the State of Georgia. On September 29, 2024, Plaintiff Yolanda Charissee Baron resided at 155 Middleton Drive, Covington, GA 30016, less than 10 miles from the Conyers Plant. As a result of the fire, Plaintiff Yolanda Charissee Baron suffered damage to real and personal property and various health issues, including respiratory, throat, and eye issues and skin irritation, among others.

23. Plaintiff Curtis Baron is a resident and citizen of the State of Georgia. On September 29, 2024, Plaintiff Curtis Baron resided at 155 Middleton Drive, Covington, GA 30016, less than 10 miles from the Conyers Plant. As a result of the fire, Plaintiff Curtis Baron suffered damage to real and personal property and various health issues, including respiratory, throat, and eye issues, skin irritation, and sarcoidosis, among others.

24. Plaintiff James George IV is a resident and citizen of the State of Georgia. September 29, 2024, Plaintiff James George IV resided at 155 Middleton Drive, Covington, GA 30016, less than 10 miles from the Conyers Plant. As a result of

the fire, Plaintiff James George IV suffered damage to personal property and various health issues, including respiratory, throat, and eye issues, skin problems, and flared colitis, among others.

25. Plaintiff Chelsea Baron is a resident and citizen of the State of Georgia. On September 29, 2024, Plaintiff Chelsea Baron resided at 155 Middleton Drive, Covington, GA 30016, less than 10 miles from the Conyers Plant. As a result of the fire, Plaintiff Chelsea Baron suffered damage to personal property and various health issues, including respiratory, throat, and eye issues, and skin problems, among others.

26. Plaintiff Valeria Walker is a resident and citizen of the State of Georgia. On September 29, 2024, Plaintiff Valeria Walker resided at 3685 Sweet Briar Lane, Conyers, GA 30094, less than 6 miles from the Conyers Plant. Plaintiff resided within the area forced to shelter in place or evacuate at the time of the September 29, 2024 Bio-Lab Fire and the resulting toxic chemical plume. As a result of the fire, Plaintiff Valeria Walker suffered property damage and various health issues, including respiratory, throat, and eye issues, among others.

27. Plaintiff Malique D. Walker is a resident and citizen of the State of Georgia. On September 29, 2024, Plaintiff Malique D. Walker resided at 3685 Sweet Briar Lane, Conyers, GA 30094, less than 6 miles from the Conyers Plant. Plaintiff resided within the area forced to shelter in place or evacuate at the time of the

September 29, 2024 Bio-Lab Fire and the resulting toxic chemical plume. As a result of the fire, Plaintiff Malique D. Walker suffered property damage and various health issues, including respiratory, throat, and eye issues, among others.

28. Plaintiff Lois Johnson is a resident and citizen of the State of Georgia. On September 29, 2024, Plaintiff Lois Johnson resided at 3685 Sweet Briar Lane, Conyers, GA 30094, less than 6 miles from the Conyers Plant. Plaintiff resided within the area forced to shelter in place or evacuate at the time of the September 29, 2024 Bio-Lab Fire and the resulting toxic chemical plume. As a result of the fire, Plaintiff Lois Johnson suffered property damage and various health issues, including throat and eye issues and intensified respiratory issues (having to increase oxygen intake), among others.

29. Plaintiff Terrance D. Hardeman is a resident and citizen of the State of Georgia. On September 29, 2024, Plaintiff Terrance D. Hardeman resided at 3685 Sweet Briar Lane, Conyers, GA 30094, less than 6 miles from the Conyers Plant. Plaintiff resided within the area forced to shelter in place or evacuate at the time of the September 29, 2024 Bio-Lab Fire and the resulting toxic chemical plume. As a result of the fire, Plaintiff Terrance D. Hardeman suffered property damage and various health issues, including throat and eye issues, and intensified underlying health issues, among others.

30. Plaintiff Timothy Askew, III is a resident and citizen of the State of Georgia. On September 29, 2024, Plaintiff Timothy Askew, III resided at 3685 Sweet Briar Lane, Conyers, GA 30094, less than 6 miles from the Conyers Plant. Plaintiff resided within the area forced to shelter in place or evacuate at the time of the September 29, 2024 Bio-Lab Fire and the resulting toxic chemical plume. As a result of the fire, Plaintiff Timothy Askew, III suffered property damage and various health issues, including breathing and eye issues, and severe headaches, among others.

31. Plaintiff Calvin Vann Jr. is a resident and citizen of the State of Georgia. On September 29, 2024, Plaintiff Calvin Vann Jr. resided at 1211 Falls Creek Court, Conyers, GA 30094, less than 3 miles from the Conyers Plant. As a result of the fire, Plaintiff Calvin Vann Jr. suffered property damage and various health issues, including breathing and respiratory issues, burning eyes, among others.

32. Plaintiff Evelyn Vann is a resident and citizen of the State of Georgia. On September 29, 2024, Plaintiff Evelyn Vann resided at 1211 Falls Creek Court, Conyers, GA 30094, less than 3 miles from the Conyers Plant. Plaintiff Evelyn Vann suffered property damage and various health issues, including respiratory issues and eye and skin issues, among others.

33. Plaintiff Tony Vann is a resident and citizen of the State of Georgia. On September 29, 2024, Plaintiff Tony Vann resided at 1211 Falls Creek Court,

Conyers, GA 30094, less than 3 miles from the Conyers Plant. Plaintiff Tony Vann suffered property damage and various health issues, including respiratory issues and eye and skin issues, among others.

34. Plaintiff Frederick Garland Sr. is a resident and citizen of the State of Georgia. On September 29, 2024, Plaintiff Frederick Garland Sr. resided at 1211 Falls Creek Court, Conyers, GA 30094, less than 3 miles from the Conyers Plant. Plaintiff Frederick Garland Sr. suffered property damage and various health issues, including eye and breathing/respiratory issues, among others.

35. Plaintiffs, Imani Garland and Frederick Garland Jr., resided at 1211 Falls Creek Court, Conyers, GA 30094, less than 3 miles from the Conyers Plant. Plaintiffs are both minors who suffered property damage and various respiratory health issues, including eye and skin issues, among others.

36. Plaintiff Mary Dean Helms is a resident and citizen of the State of Georgia. On September 29, 2024, Plaintiff Mary Dean Helms resided at 3900 Troupe Smith Road SE, Conyers, GA 30094, less than 6 miles from the Conyers Plant. Plaintiff resided within the area subject to the forced shelter-in-place order at the time of the September 29, 2024 Bio-Lab Fire and the resulting toxic chemical plume. Plaintiff Mary Dean Helms suffered property damages and various health issues, including respiratory issues, and eye and breathing issues, among others.

37. Plaintiff Rhonda Pruitt is a resident and citizen of the State of Georgia. On September 29, 2024, Plaintiff Rhonda Pruitt resided at 115 Blue Grass Ct., Oxford, GA 30054, less than 10 miles from the Conyers Plant. As a result, Plaintiff Rhonda Pruitt suffered property damages and various health issues, including respiratory issues and eye and throat issues, among others.

38. Plaintiff Gregory Lovett is a resident and citizen of the State of Georgia. On September 29, 2024, Plaintiff Gregory Lovett resided at 3530 Knollview Court, Decatur, GA 30034, less than 12 miles from the Conyers Plant. As a result, Plaintiff Gregory Lovett suffered property damages and various health issues, including respiratory issues, eye and stomach issues, among others.

39. Plaintiff Christine Lovett is a resident and citizen of the State of Georgia. On September 29, 2024, Plaintiff Christine Lovett resided at 3530 Knollview Court, Decatur, GA 30034, less than 12 miles from the Conyers Plant. As a result, Plaintiff Christine Lovett suffered property damage and various health issues, including respiratory issues, eye and stomach issues, among others.

40. Plaintiff Carla Moore is a resident and citizen of the State of Georgia. On September 29, 2024, Plaintiff Carla Moore resided at 2116 Appalossa Way, Conyers, GA 30012, less than 1 mile from the Conyers Plant. Plaintiff resided within the area subject to the forced shelter-in-place order at the time of the September 29, 2024 Bio-Lab Fire and the resulting toxic chemical plume.

Plaintiff Carla Moore suffered property damages and various health issues, including respiratory issues and eye and breathing issues, among others.

41. Plaintiff Carl Durgan is a resident and citizen of the State of Georgia. On September 29, 2024, Plaintiff Carl Durgan resided at 2116 Appalossa Way, Conyers, GA 30012, less than 1 mile from the Conyers Plant. Plaintiff resided within the area subject to the forced shelter-in-place order at the time of the September 29, 2024 Bio-Lab Fire and the resulting toxic chemical plume. Plaintiff Carl Durgan suffered property damages and various health issues, including respiratory issues, and eye and breathing issues, among others.

42. Plaintiff Hannah Moore-Harris is a resident and citizen of the State of Georgia. On September 29, 2024, Plaintiff Hannah Moore-Harris resided at 2116 Appalossa Way, Conyers, GA 30012, less than 1 mile from the Conyers Plant. Plaintiff resided within the area subject to the forced shelter-in-place order at the time of the September 29, 2024 Bio-Lab Fire and the resulting toxic chemical plume. Plaintiff Moore-Harris suffered property damages and various health issues, including respiratory issues and eye and breathing issues, among others.

**II. Defendants**

**A. Bio-Lab, Inc.**

43. Bio-Lab is a Delaware corporation with its principal place of business in the State of Georgia. Bio-Lab is licensed to do business in the State of Georgia and

conducts business in this District. Bio-Lab is a wholly owned subsidiary of Defendant KIK International, LLC, a Delaware limited liability company.

44. Bio-Lab can be served through its Registered Agent, Corporation Service Company, at 2 Sun Court, Suite 400, Peachtree Corners, GA, 30092, or wherever it may be found.

45. Defendant Bio-Lab, Inc. manufactures and distributes swimming pool and spa water care chemicals, including products under the names BioGuard, SpaGuard, Natural Chemistry, SeaKlear, AquaPill, Coral Seas, ProGuard, Spa Essentials, and Pro Series.

46. At all relevant times, Bio-Lab owned and operated on behalf of the remaining Defendants, the Conyers Plant located at 1700 Covington Highway, Conyers, Georgia 30012. Among other operations, the Conyers Plant received, blended, and packaged TCCA, chlorinated isocyanurates, and other raw materials to produce finished consumer products for swimming pool and spa treatment chemicals.

**B. KIK Defendants**

47. Defendant KIK International, LLC is a Delaware limited liability company with its principal place of business in Ontario, Canada. KIK International may be served through its registered agent for service of process, The Corporation

Service Company, at 251 Little Falls Drive, Wilmington, Delaware 19808, or wherever it may be found.

48. Defendant KIK Custom Products, Inc. ("KIK") is a Delaware corporation with its principal place of business in Ontario, Canada. KIK uses the registered trade name KIK Consumer Products, Inc.

49. KIK d/b/a KIK Consumer Products, Inc. may be served through its registered agent for service of process, The Corporation Service Company, at 251 Little Falls Drive, Wilmington, Delaware 19808, or wherever it may be found.

50. Defendant KIK US Holdings, LLC is a Delaware limited liability company with its principal place of business in Illinois and may be served through its registered agent for service of process, The Corporation Service Company, at 251 Little Falls Drive, Wilmington, Delaware 19808, or wherever it may be found.

51. KIK International, LLC, KIK Custom Products, Inc., and KIK US Holdings, LLC are collectively referred to as "KIK Defendants."

52. KIK is one of North America's largest independent manufacturers of consumer products. KIK acquired Bio-Lab in 2013 in order to expand its pool and spa treatment business.

53. KIK, at all relevant times, owned and operated the Conyers Plant.

54. Upon information and belief, Bio-Lab has consistently held itself out as conducting business affairs as a conduit for KIK in connection with the

ownership and operation of its chemical enterprise, including promoting itself as "the swimming pool and spa water care division of KIK Consumer [Custom] Products, based in Lawrenceville, Georgia."

55. Additionally, Bio-Lab and KIK constituted a joint venture in connection with the Conyers Plant because they agreed to undertake ownership and operation of the Conyers Plant jointly for the purpose of sharing associated profits and losses. Each contributed their respective skills, property, or resources in exercising control or a right of control over the Conyers Plant.

**C. Centerbridge Defendants**

56. Defendant Centerbridge Partners, LP ("CB Partners" or "Centerbridge Partners") is a Delaware limited partnership. Upon information and belief, Centerbridge Partners' primary place of business is in New York.

57. Centerbridge Partners, LP may be served through its registered agent, The Corporation Trust Company, at the Corporation Trust Center, 1209 Orange St, Wilmington, Delaware 19801.

58. Defendant Centerbridge Capital Partners III, LP ("Centerbridge Capital" or "Centerbridge Fund") is a Delaware limited partnership private equity investment fund established in 2014. Upon information and belief, Centerbridge Capital's primary place of business is in New York.

59. Centerbridge Capital Partners III, LP may be served through its registered agent for service of process, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

60. Centerbridge Partners, LP and Centerbridge Capital Partners III, LP are collectively referred to as "Centerbridge."

61. Upon information and belief, Centerbridge Partners created, promoted, and controls Centerbridge Fund.

62. Centerbridge acquired KIK in June 2015.

## COMMON FACTUAL ALLEGATIONS

***Corporate Structure, Ownership, and Joint Conduct***

63. At all times relevant to this action, Defendants Bio-Lab, Inc., KIK International, LLC, KIK Custom Products, Inc. d/b/a/ KIK Consumer Products, Inc., KIK U.S. Holdings, LLC, Centerbridge Partners, LP and Centerbridge Capital Partners III, LP owned, operated, managed, directed, controlled, financed, supervised, and/or exercised authority over the Conyers Plant and the operations that gave rise to the September 29, 2024 Bio-Lab Fire.

64. At all relevant times, Bio-Lab was a wholly owned subsidiary within the KIK corporate enterprise. Upon information and belief, the KIK Defendants exercised substantial direction, management, oversight, and control over Bio-Lab's

operations, including environmental compliance, regulatory affairs, operational policies, budgeting, safety programs, and business operations affecting the Conyers Plant.

65. Upon information and belief, the KIK Defendants and Bio-Lab shared officers, directors, managers, resources, operational functions, and decision-making authority relating to the Conyers Plant. Bio-Lab acted in furtherance of the KIK enterprise, and the KIK Defendants directly exercised authority over significant operational and corporate decisions affecting the Conyers Plant.

66. Officers and Directors of the KIK Defendants executed documents on behalf of Bio-Lab, including routine assignments of intellectual property rights amongst the KIK Defendants and Bio-Lab.

67. KIK employees has also been listed as the corporate point of contact for county government inspections of the Conyers Plant and applications for repairs after the fires in September 2020 at the same plant.

68. At all times relevant, the Centerbridge Defendants held ownership interests, governance authority, financial oversight, and operational influence over the KIK enterprise during the relevant period for this action. Through these ownership interests and governance rights, the Centerbridge Defendants were involved in and benefited from the operation of the Bio-Lab business and the Conyers Plant.

69. Upon information and belief, the Defendants acted collaboratively in owning, operating, managing, directing, supervising, financing, maintaining, and controlling the Conyers Plant, as well as the hazardous chemicals stored on the premises. Each Defendant was aware, or should have been reasonably aware, of the risks associated with their operations and failed to implement appropriate measures to prevent the Bio-Lab Fire that occurred on September 29, 2024, as well as the subsequent release of hazardous chemicals into the surrounding community.

70. As a result of the aforementioned reasons, and as further detailed below, the Defendants are jointly and severally liable, to the extent allowed by applicable law, for the injuries and damages suffered by the Named Plaintiffs and the members of the proposed Class due to the Bio-Lab Fire on September 29, 2024, and the subsequent release of a toxic chemical plume.

***The Conyers Plant and Its Hazardous Operations***

71. At all times relevant to this action, Defendants owned, operated, managed, controlled, and/or exercised authority over the Bio-Lab Conyers Plant, a chemical manufacturing and distribution facility located at 1700 Covington Highway, Conyers, Georgia. The Conyers Plant manufactured, blended, processed, packaged, stored, and distributed swimming pool and spa water treatment chemicals for consumer use, including chlorinated pool-treatment products.

72. After Centerbridge's acquisition of KIK, Centerbridge kept it severely undercapitalized, which resulted in KIK's industrial safety measures remaining seriously deficient. Any genuinely independent corporate entity in KIK's situation would have recognized the risk that additional incidents would pose to both the sustainability of KIK's business operations and the communities that host KIK facilities.

73. However, Centerbridge's first major financial move after another plant it owned was destroyed was to force KIK to distribute roughly $484 million in dividends—exceeding the amount of equity which Centerbridge had in KIK.

74. At all times relevant, Centerbridge has maintained and exercised the right to control KIK's level of investment in safety infrastructure and has effectively barred KIK from making necessary investments and improvements in safety infrastructure.

75. Defendants either positively or tacitly arrived at a mutual understanding as to how they would accomplish an unlawful design to commit the acts which are detailed herein, such that the act of one is the act of all defendants.

76. Among the chemicals processed, packaged, and stored at the Conyers Plant were TCCA, sodium dichloroisocyanurate ("NaDCC"), and other chlorinated isocyanurate compounds used in swimming pool and spa treatment products. These chemicals are oxidizing agents that, when exposed to certain conditions,

including heat, water, or moisture, may undergo decomposition reactions that generate substantial heat and release toxic gases.

77. The CSB's July 2026 Investigation Report (referred to as the "CSB 2026 Report") stated that the incident on September 29, 2024, originated in Plant 12 of the Conyers Plant. This warehouse is designed for storing large quantities of pool-treatment chemicals and related materials. At the time of the incident, Plant 12 held substantial amounts of chlorinated isocyanurates and other oxidizing chemicals, which were stored in large flexible intermediate bulk containers commonly known as "super sacks." Additionally, the warehouse contained packaging materials and other combustible items used in the defendants' operations.

78. Importantly, the Conyers Plant building 12 housed approximately fourteen million pounds of oxidizing chemicals at the time of the incident, significantly exceeding the expected average inventory of around 6.2 million pounds of raw materials, including oxidizing chemicals, that had been reported to local authorities prior to the building's construction.

79. Defendants knew or should have known that TCCA, NaDCC, and the other pool-treatment chemicals processed and stored at the Conyers Plant required careful handling and storage, as chlorinated isocyanurates can decompose when exposed to water or moisture, generating significant heat and releasing toxic gases capable

of causing fires, explosions, and widespread community harm if not properly managed.

80. Because of the nature and quantity of the chemicals stored at Plant 12, Defendants were required to exercise reasonable care in the design, operation, inspection, maintenance, storage, handling, and oversight of the Conyers Plant to prevent the release of hazardous chemicals into the surrounding community. Named Plaintiffs allege that Defendants failed to do so, resulting in the September 29, 2024 Bio-Lab Fire and the injuries and damages alleged herein.

***Bio-Lab's Prior Fires and Regulatory History***

81. The Bio-Lab fire that occurred on September 29, 2024, was not an isolated incident. Before this date, the Conyers Plant had experienced multiple fires, explosions, and releases of toxic chemicals related to pool-treatment chemicals.

82. These previous incidents, along with the Conyers Plant's history of regulatory violations and enforcement actions, must have indicated to the Defendants the hazards associated with the storage, handling, and processing of chlorinated pool-treatment chemicals at the Conyers Plant.

83. In May 2004, a warehouse at the Conyers Plant caught fire after an explosion involving approximately 250,000 pounds of dry chlorine pellets. The fire produced a toxic chlorine plume that affected communities well beyond the

Conyers Plant, prompted the evacuation of nearby residents, and resulted in the closure of Interstate 20. This injured at least 28 people.

84. In 2016, another fire ignited in a storage shed at the Conyers Plant. Upon information and belief, the fire protection system did not properly activate, and Bio-Lab did not notice the occurrence of this incident; the first report was made by a nearby resident after he smelled smoke and chemical odors, and once the authorities had knowledge, residents within approximately one mile of the facility were evacuated.

85. On September 14, 2020, a water leak at the Conyers Plant came into contact with TCCA, causing a chemical decomposition reaction, a fire, and the release of a hazardous chemical plume, causing the chlorine levels in the air at nearby properties to be measured 12 times the permissible exposure limit set by the federal government. Nearby businesses were evacuated, Interstate 20 was temporarily closed, emergency responders were exposed to hazardous fumes, and the property damage was estimated at $1,007,000.

86. Four days later, on September 18, 2020, a trailer containing TCCA caught on fire at the Conyers Plant, further releasing toxic materials into surrounding communities.

87. Defendants have a history of violating state and federal regulations related to the Conyers Plant. Inspections by the Environmental Protection Agency (EPA) led

to informal and formal enforcement actions due to the facility's non-compliance with its obligations. Inspections and subsequent investigations of prior events also revealed issues, including improper storage of hazardous chemicals, deterioration of critical fire protection systems, and failures to properly identify, assess, and address known hazards associated with the storage of chemicals.

88. The KIK and Centerbridge Defendants operated other plants they owned, such as the one in Lake Charles, in a similarly illegal manner. Following Hurricane Laura, there was an explosion at their Lake Charles plant which also resulted in findings of mismanagement and failures to adequately prepare the plant for weather events.

89. In the months of August and September 2020, KIK facilities at Lake Charles and Conyers both experienced fires and hazardous chlorine releases caused by a failure to protect TCCA materials from water while in storage.

90. In 2023 and 2024, that same Lake Charles plant had additional failures which caused fires and shelter-in-place orders.

91. The improvident and forced nature of KIK's dividend payments to Centerbridge was further revealed in December 2021, when KIK required another $170 million in loans to fund working capital and capital expenditure requirements relating to reconstruction of the Lake Charles Plant.

92. A federal investigation revealed that the cause of the Lake Charles Plant fire and chemical cloud was rainwater which came into contact with stored TCCA, which initiated a chemical reaction, decomposition, and fire. The federal investigation found that BioLab: (a) failed to "learn the importance of preparing for extreme weather;" (b) failed to implement recommendations from BioLab's Process Hazard Analyses under their Process Safety Management program; (c) failed to "adequately maintain its fire protection system to protect against fire hazards and ensure its functionality during an emergency," which caused "serious delays in responding to the TCCA-based formulation decomposition;" and (d) failed failure to "conform to the safeguards identified in the National Fire Protection Association (NFPA) 101 *Life Safety Code* for high-hazard industrial occupancies."

93. In November 2022, Defendants celebrated the reopening of the Lake Charles Plant, touting it as stronger and safer than ever. In March 2023, there was a chlorine leak at the Lake Charles Plant that caused a shelter-in-place order for the area surrounding the plant. On July 2, 2024, the Lake Charles Plant again caught fire prompting freeway closures and shelter-in-place orders.

94. This intentional, willful, and wanton conduct creates a presumption of conscious indifference to the consequences of its actions that warrants the imposition of punitive damages.

95. Inspections by the Rockdale County Fire Rescue in 2022 revealed at least 69 chemicals stored at the Conyers Plant, 48 of which posed health hazards. Several of these chemicals were also known to be explosive or combustible.

96. Defendants regularly stored and used dozens of hazardous chemicals that are harmful to human health and the surrounding environment at the Conyers Plant, many of which evolve to release additional hazardous chemicals after combustion or decomposition, e.g., when exposed to heat, fire, or water.

97. The CSB's November 2024 Investigation Report following the September 29, 2024 fire states that the primary bulk chemicals at Plant 12 were TCCA and DCCA. The report further stated that "[t]hey can release toxic and corrosive products such as chlorine gas and hydrogen chloride upon decomposition." These chemicals were stored in super sacks prior to their distribution to other parts of the Conyers Plant.

98. According to its standard storage guidelines which are known in the industry, users of TCCA should store it in a tightly closed container in a dry, cool, well-ventilated place. TCCA should be protected from moisture, direct sunlight, and extreme temperatures and should not be mixed with other chemicals, including other swimming pool chemicals in their concentrated forms. TCCA is a strong oxidizer and can intensify existing fires. In responding to a TCCA-involved fire, firefighting personnel are instructed to avoid contacting TCCA with water. They

are further instructed not to let the fire burn because thermal decomposition of TCCA can release toxic, corrosive, and noxious gases/vapor, including chlorine gas, and wet TCCA can generate nitrogen trichloride, which creates an explosion hazard.

99. The CSB November Report also stated that Plant 12 stored super sacks of bromochloro-5,5-dimethylimidazolidine-2,4-dione (BCDMH).

100. According to its standard storage guidelines, BCDMH should be stored in a tightly closed container, away from water, moisture, sources of ignition, direct sunlight, heat, sparks, open flame, combustible materials, wooden floors, and incompatible materials including strong oxidizing agents, strong acids, strong bases, alcohols, strong reducing agents, and organic materials. BCDMH can produce irritating and toxic fumes and gases upon decomposition that contain, e.g., nitrogen oxides, carbon monoxide, carbon dioxide, hydrogen bromide, hydrogen chlorine, bromine, and chlorine. Defendants violated these mandates.

101. Defendants also used and stored myriad other chemicals at the Conyers Plant that pose serious risks to human health and the ability to safely use and enjoy property.

102. At all relevant times, the risk of a chemical fire caused by and/or involving these chemicals and the release of a toxic chemical plume was reasonably foreseeable to Defendants. It was likewise reasonably foreseeable to Defendants

that the risk of a chemical fire and the release of a toxic chemical plume could impact nearby properties and present a hazard to the residents located near the Conyers Plant.

103. Defendants knew or should have known, from, inter alia, a March 2001 EPA Safe Storage and Handling of Swimming Pool Chemicals Alert, that at least eleven fires involving swimming pool chemicals occurred between 1996 and 2000, the vast majority of which were specifically caused by pool chemicals becoming wetted by a small quantity of water, including water leaked from a fire suppression sprinkler system, or when mixed with other chemicals and/or reactive materials.

***The September 29, 2024 Fire***

104. Defendants operated the Conyers Plant with a shocking disregard for safety. Despite previous incidents and the known risks associated with storing and handling chlorinated pool treatment chemicals, they failed to implement essential safety improvements. Additionally, they did not maintain critical fire protection systems, establish adequate policies for the storage and handling of reactive chemicals, sufficiently staff and train personnel, or develop effective emergency response procedures to prevent or mitigate a chemical decomposition event.

105. On September 29, 2024, Defendants' longstanding failures to implement and maintain adequate safety systems, properly manage hazardous chemicals, and

adopt effective emergency response procedures culminated in a catastrophic fire at the Conyers Plant. The incident was the foreseeable result of Defendants' failures.

106. The fire originated at approximately 5:00 A.M. within building 12 of the Conyers Plant, where large quantities of TCCA and other pool-treatment chemicals were stored. During the incident, according to the CSB 2026 Report, the fire triggered a corroded sprinkler component, which released water into the warehouse and allowed water to contact chlorinated isocyanurates and other oxidizing chemicals contained in the fire and at the facility, initiating a decomposition reaction that generated substantial heat, toxic vapors, and multiple fires within the warehouse.

107. As the decomposition reaction progressed, additional quantities of hazardous chemicals became involved, producing substantial heat, toxic gases, dense smoke, and multiple fires throughout building 12 of the Conyers Plant. The resulting plume contained hazardous decomposition products that spread well beyond the boundaries of the facility and posed a significant threat to surrounding residents, businesses, schools, and emergency responders.

108. Rockdale County Fire Rescue, together with numerous neighboring fire departments and emergency response agencies, responded to the incident. Although portions of the fire were initially brought under control, the incident

reignited later that day, producing an additional large toxic chemical plume. Smoldering materials and off-gassing continued after fire suppression measures within the Conyers plant failed, prolonging the emergency response.

109. The fire ultimately resulted in the complete collapse of Plant 12. According to the CSB, the area surrounding the Conyers Plant remained an active unified emergency response scene for nearly four weeks following the incident due to ongoing hazards associated with the damaged facility and hazardous chemicals remaining on-site.

110. The September 29, 2024 fire and resulting toxic chemical release required an immediate and extensive emergency response. The hazardous plume spread across surrounding counties, prompting emergency protective actions by state and local authorities, including evacuation orders, shelter-in-place directives, shelter-in-place suggestions, transportation closures, and other protective measures described more fully below.

111. Named Plaintiffs allege that the September 29, 2024 fire, the resulting decomposition reaction, the release of hazardous chemicals, and the widespread impacts on the surrounding community were the direct and proximate result of Defendants' grossly negligent, reckless, and otherwise wrongful acts and omissions in the ownership, operation, maintenance, management, supervision, and control of the Conyers Plant and the hazardous chemicals stored therein.

***Community-Wide Impact***

112. The September 29, 2024 Bio-Lab catastrophic incident required an immediate and widespread emergency response that disrupted the daily lives of tens of thousands of Georgia residents and businesses. As the toxic plume expanded beyond the Conyers Plant, state and local officials implemented evacuation orders, shelter-in-place directives, road closures, business interruptions, and other emergency measures to protect the public.

113. At approximately 1:10 p.m. on September 29, 2024, Rockdale County authorities issued an evacuation order directing residents living between Sigman Road and Interstate 20 near the Conyers Plant to evacuate immediately, while residents north of Sigman Road were instructed to shelter in place with their windows closed. The evacuation order displaced approximately 17,000 residents.

114. At approximately 8:30 p.m. on September 29, 2024, Rockdale County expanded its emergency protective measures by issuing a county-wide shelter-in-place order affecting approximately 90,000 residents. County officials instructed residents to remain indoors, keep windows and doors closed, and turn off ventilation systems, including air conditioning units, to reduce exposure to hazardous airborne chemicals, which, according to Plaintiff James George IV, generated great discomfort because it "had house too hot."

115. The incident also caused widespread transportation disruptions. Interstate 20 was closed in both directions between Salem Road and Turner Hill Road, numerous state and local roadways surrounding the Conyers Plant were closed, and railroad operations adjacent to the Conyers Plant were likewise suspended for an extended period while emergency responders stabilized the site.

116. The impacts of the incident extended beyond residential neighborhoods. Piedmont Rockdale Hospital evacuated patients and operated on diversion status, delaying emergency medical treatment. Government operations, commercial activity, schools, healthcare providers, and other essential services throughout Rockdale County experienced substantial disruptions due to the ongoing emergency.

117. Educational institutions throughout the affected area also experienced significant disruptions. Rockdale County Public Schools remained closed during the week of September 30 through October 4, 2024, transitioned to remote learning from October 10 through October 18, 2024, and did not resume in-person instruction until October 21, 2024. The CSB investigation concluded that these closures affected more than 16,500 students.

118. Named Plaintiffs and members of the proposed Class were directly affected by these emergency measures. As a result of Defendants' conduct, Named Plaintiffs and Class Members were forced to evacuate or shelter in place, were

deprived of the use and enjoyment of their homes and businesses, experienced interruptions to employment, education, healthcare, travel, and other ordinary activities, and suffered the injuries and damages alleged throughout this Complaint.

119. Neighboring counties such as DeKalb, Walton, Newton, Fayette, and more all issued "stay home" orders, and government/administrative business was closed.

120. The EPA continued to detect chlorine gas in the air near the Conyers Plant at levels above the safe level through October 11, 2024.

121. As winds shifted in those weeks, the toxic chemical plume traveled between multiple cities and counties throughout the metropolitan Atlanta area.

122. EMA Updates noted that "off-gassing" and "smoldering" continued to occur at the Conyers Plant through October 6, 2024, adding toxic chemicals to the air. Off-gassing reportedly continued into October 7, 2024.

123. Atlanta-Fulton County EMA advised residents to stay inside and informed residents of the myriad of negative health impacts the toxic chemicals emitted from the Conyers Plant can have, including "irritation of the eyes and airways, coughing, shortness of breath, difficulty breathing, chest tightness, a scratchy throat, irritated sinuses, headaches, stinging eyes, or a runny nose." Residents were further warned that "People with lung disease may not be able to breathe as

deeply or as vigorously as usual, and they may experience symptoms such as coughing, phlegm, chest discomfort, wheezing, and shortness of breath."

124. According to the Center for Disease Control's Medical Management Guidelines (MMG) for Chlorine, "chlorine gas is irritating and corrosive to the eyes, skin, and respiratory tract" [and] that exposure to chlorine "may cause burning of the eyes, nose, and throat; cough as well as constriction and edema of the airway and lungs can occur.

125. Hundreds of residents in the Atlanta area have visited emergency rooms and clinics complaining of the symptoms associated with an exposure to Bio-Lab's smoke, and more than 700 residents made poison control calls to the Georgia Poison Center.

126. The frequency and severity of fires at the Conyers Plant over the past 20 years have negatively impacted the property values of residents living nearby.

## CLASS ACTION ALLEGATIONS

127. Named Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(1), 23(b)(2), 23(b)(3), and/or 23(c)(4) on behalf of themselves and a Class of all other similarly situated for direct, proximate, and foreseeable losses caused by the September 29, 2024 Conyers Plant fire and toxic chemical plume.

128. Pursuant to Rule 23(c) of the Federal Rules of Civil Procedure, Named Plaintiffs seek to certify and represent the Class defined as follows:

a. All persons and entities who resided, owned, leased, or occupied property, or who worked at or operated businesses within 25 mile radius of the Conyers Plant, or who were subject to evacuation orders, shelter-in-place directives, or related advisories issued as a result of the September 29, 2024 fire and toxic chemical release from the Conyers Plant, and who thereby sustained property damage, economic loss, loss of use and enjoyment of property, business interruption, and other legally compensable damages (Hereinafter, the "Class Area").

129. Excluded from the Class are Defendants and any of their parents, subsidiaries, affiliates, or controlled persons of Defendants; Defendants' officers, directors, employees, or agents; governmental entities; the judicial officer assigned to this case, and any members of their staffs and their immediate families, and any juror assigned to this action; and any person who timely elects exclusion from the Class if a Class is certified.

130. Named Plaintiffs hereby reserve the right to amend or modify the Class definition with greater specificity or division after having had an opportunity to conduct additional investigation and discovery.

131. The proposed Class meets the criteria for certification under Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

132. **Numerosity.** The members of the proposed Class are so numerous that joinder of all members is impracticable. Although the exact number of members of the Class is currently unknown to Named Plaintiffs, upon information and belief, the proposed Class consists of thousands of members (individuals and businesses) if not more, who were wrongfully exposed to chlorine gas and other toxic chemicals arising from the September 29, 2024 Bio-Lab Fire and the resulting toxic chemical plume, and sustained damages. Class members may be identified through objective means, including objective data available to the Parties regarding the persons and property present in the affected areas following the fire. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, social media and/or published notice.

133. **Predominance of Common Questions of Law or Fact.** There are questions of law and fact common to all members of the Class, and these common issues predominate over any individual issues. The common legal and factual questions do not vary from member to member and may be determined without reference to the individual circumstances of any Class Member, including, but not limited to, the following:

a) Whether Defendants engaged in the wrongful conduct alleged herein;

b) Whether Defendants caused the Conyers Plant fire in violation of rules, regulations, and customs;

c) Whether Defendants caused the release of toxic chemicals and particulate matter into the surrounding communities;

d) Whether Defendants failed to exercise reasonable care in allowing the Conyers Plant fire to occur;

e) Whether Defendants failed to exercise reasonable care in causing the release of toxic chemicals and particulate matter into the Rockdale community and surrounding communities;

f) Whether Defendants omitted required, reasonable, or minimal safety measures resulting in the Conyers Plant fire and toxic release;

g) Whether Defendants failed to follow required, reasonable, or minimal safety measures that would have mitigated the Conyers Plant fire and toxic release;

h) Whether Defendants engaged in ultrahazardous activities;

i) Whether Defendants were negligent;

j) Whether Defendants created a nuisance;

k) Whether Defendants engaged in trespass to Class members' properties;

l) Whether a medical monitoring fund is an appropriate remedy to provide Named Plaintiffs and Class members with the resources needed to cover the

costs of diagnostic tests or examinations that are medically necessary for them to obtain early detection and treatment of latent injuries arising from their exposure to toxic chemicals, fumes, smoke, and debris from the September 29, 2024 fire at the Conyers Plant;

m) Whether Defendants knew or should have known that exposure to the chemicals at the Conyers Plant, and contamination resulting from their release, would pose significant health risks to Named Plaintiffs and Class members;

n) Whether Named Plaintiffs and the other Class members suffered injury and damages as a result of Defendants' conduct;

o) Whether Defendants acted with conscious disregard for the rights and safety of other persons causing substantial harm, rendering them liable for punitive or exemplary damages; and

p) Whether Named Plaintiffs and the other Class members are entitled to damages, equitable relief, and other remedies.

134. The above common questions predominate over any questions affecting only individual members of the Putative Class.

135. Typicality. Plaintiffs' claims are typical of class members' claims and arise from the same course of conduct by Defendants.

136. Pursuant to Rule 23(a)(3) of the Federal Rules of Civil Procedure, the claims presented by the Named Plaintiffs are representative of the claims held by other members of the Putative Class. The Named Plaintiffs, similar to all other members of the Putative Class, either resided in, rented, or owned real property within the designated Class Area and were mandated to evacuate their residences.

137. The foundation of the claims put forth by the Named Plaintiffs is derived from a singular incident, specifically the Conyers Plant Fire that occurred on September 29, 2024. This incident resulted in the release of a substantial plume of toxic chemicals that was generated by the Plant and subsequently dispersed throughout the Class Area. The material facts that underly each Class member's claim are identical to the material facts supporting the claims asserted by the Named Plaintiffs in this matter and necessitate the presentation of the same evidential substantiation.

138. The Named Plaintiffs and other members of the Class incurred damages as a direct and proximate result of the wrongful acts or omissions perpetrated by the Defendants.

139. Named Plaintiffs' damages and injuries are akin to those of Class members, and Named Plaintiffs seek relief consistent with the relief of Class members.

140. **Adequacy.** Pursuant to Rule 23(a)(4) of the Federal Rules of Civil Procedure, the Named Plaintiffs will adequately and fairly represent the interests of the

Putative Class. There are no known conflicts of interest between the Named Plaintiffs and the other members of the Class; their interests are not subject to unique defenses; their interests align closely with those of all Putative Class members. By substantiating their individual claims, the Named Plaintiffs will inherently affirm the claims of the other Class members and establish the Defendants' liability on a Class-wide basis.

141. Named Plaintiffs, therefore, can and will fairly and adequately protect and represent the other Class members' interests.

142. The Named Plaintiffs' counsels are fully qualified to prosecute the claims of the Class. Named Plaintiffs' counsels are competent and experienced in personal injury, property damage litigation, litigation relating to the loss of use of property, and nuisance.

143. If appointed Class representative, Named Plaintiffs are aware of, and are committed to, faithfully upholding their fiduciary duties to absent Class members.

144. Named Plaintiffs and their counsels are committed to the vigorous prosecution of this action and will allocate the appropriate time and resources to ensure that the Class is fairly represented.

145. Named Plaintiffs and their counsel will, therefore, fairly and adequately assert and protect the interests of the Class.

146. Superiority. A Class action is the superior method for fairly and efficiently adjudicating this controversy because resolution of the common issues of fact and law in a single proceeding will eliminate inconsistent outcomes, allow Class members to share litigation costs, and preserve judicial resources. Individual suits would impose enormous burdens on the courts and create irrational economic disincentives for most Class members to pursue claims on their own, making collective adjudication the only practical alternative.

147. This action may also be maintained as a class action under Rule 23(b)(1)(b). The prosecution of individual actions could also result in adjudications with respect to individual class members which would as a practical matter be dispositive of the interests of non-party class members or substantially impair or impede non-party class members' ability to protect their interests.

148. Moreover, prosecuting this matter as a Class action presents fewer management difficulties, better conserves resources, and more effectively protects the rights of each Class member than piecemeal litigation. Rule 23 provides the Court with the flexibility to maximize efficiencies, certify subclasses or specific issues as needed, and ensure that adjudications do not impair the interests of absent Class members. Any potential management challenges are substantially outweighed by the benefits to the parties, the Court, and the public.

## CLASS INJUNCTIVE RELIEF PURSUANT TO RULE 23(b)(2)

149. This action may be maintained as a class action under Rule 23(b)(2) because Defendants have acted and failed to act on grounds generally applicable to the Class, requiring uniform court-imposed relief. Class members seek equitable remedies, including medical monitoring and injunctive relief, as they have no adequate remedy at law for the increased risks of illness and disease caused by exposure to toxic chemicals released from the Conyers Plant. Declaratory and injunctive relief, including the establishment of a medical monitoring program and fund, is therefore appropriate.

150. As a direct result of Defendants' wrongful conduct on September 29, 2024, toxic fumes, smoke, and debris containing chlorine, hydrochloric acid, hydrogen cyanide, hydrogen bromide, phosgene, and other hazardous chemicals spread throughout the surrounding communities. These substances are known to cause severe, life-altering injuries even with short-term exposure, and Named Plaintiffs and Class members now face increased risks of serious illnesses and disease processes. Medical monitoring is reasonably and medically necessary to detect latent conditions early and provide timely treatment.

151. Early detection through diagnostic testing and examinations is critical, as it allows for more effective treatment options and reduces the risk of progression to severe illness. Named Plaintiffs and Class members have already been injured

by the present need to incur the costs of such testing, which is a direct consequence of Defendants' conduct. Their legally protected interests in avoiding exposure to toxic chemicals and the resulting medical burdens have been invaded, creating a need for equitable relief.

152. A comprehensive medical monitoring program, supervised by the Court and funded by Defendants, can mitigate these harms. Such a program should notify exposed individuals of potential risks, provide periodic testing and treatment, and collect medical data to support ongoing diagnosis and research. Court oversight will ensure that trust fund proceeds are reserved for equitable purposes and that program administration addresses emerging issues. Class adjudication of the right to this relief is both appropriate and necessary, and Rule 23(b)(2) provides the authority to certify these injunctive claims for Class-wide adjudication.

## CAUSES OF ACTION

### COUNT I – Negligence (Against All Defendants)

153. Named Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

154. Defendants, as manufacturers, distributors, and suppliers of swimming pool and spa water care chemicals, possessed superior knowledge regarding the properties and dangers of such chemicals, including TCCA. Despite this expertise, Defendants were aware, or in the exercise of reasonable care should

have been aware, of the risks of fire and hazardous chemical reactions arising from the improper handling and storage of TCCA and other combustible materials.

155. Defendants knew or should have known of the risk that a fire at the Conyers Plant would result in the release of toxic smoke and debris into the surrounding neighborhood and communities.

156. Defendants owed Named Plaintiffs and Class members a duty to operate the Conyers Plant in a manner that would not cause Named Plaintiffs and Class members injury or harm.

157. Defendants breached the duties that they owe to Named Plaintiffs and Class members, to exercise reasonable care, which has interfered with Class members' property and caused property damage, lost profits, loss of use, and expected diminution of property value.

158. Defendants breached their duties by, among other things:

a) Failing to ensure that chemicals were stored in a manner that would prevent them from coming into contact with water;

b) Failing to take sufficient precautions to prevent a fire, including but not limited to, failing to ensure the adequacy and operation of sprinklers at the Conyers Plant;

c) Failing to create and/or implement corporate policies and procedures that would prevent ignitions, explosions, and runaway chemical reactions from happening;

d) Otherwise failing to take sufficient precautions to control the emissions of toxic and harmful substances, smoke, debris, particulate matter, dust, and/or other pollutants from Named Plaintiffs' and Class members' property;

e) Failing to create and/or implement corporate policies and procedures that would mitigate impacts from ignitions, explosions, and runaway chemical reactions if they occurred.

159. Furthermore, the Defendants' negligence can be inferred from the circumstances surrounding the fire and toxic chemical plume that occurred at the Conyers Plant on September 29, 2024. Such a fire, explosion, and toxic release do not happen without negligence on the part of the Defendants.

160. Throughout the relevant period, the Defendants and their agents had exclusive control over the Conyers Plant and all materials involved in causing the fire and the toxic plume. The Named Plaintiffs and Class members had no involvement whatsoever in the events leading to the fire and toxic chemical release. Therefore, the Defendants are liable under the doctrine of *res ipsa loquitur*.

161. As a direct and immediate consequence of the Defendants' negligent conduct, the Named Plaintiffs and Class members have suffered, and will continue to

suffer, various damages. These include, but are not limited to: damage to real property, out-of-pocket costs, damage to personal property, loss of use and enjoyment of their property, decreased property value, loss of business income, loss of business goodwill, diminution in property value, loss of business income, loss of business goodwill, annoyance, upset, aggravation, inconvenience as well as bodily injuries, feelings of frustration, upset, and irritation. Furthermore, they have experienced inconvenience, an increased risk of related health issues, and currently require medical monitoring for early detection of possible conditions.

162. The wrongful actions of Defendants constitute bad faith which entitles Named Plaintiffs and Class members to their attorneys' fees and costs of litigation pursuant to O.C.G.A. § 13-6-11.

163. The wrongful actions of Defendants constitute willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences, rendering them liable to Named Plaintiffs and Class members for punitive damages pursuant to O.C.G.A. § 51-12-5.1.

164. Because Defendants acted with the specific intent to cause harm, there is no limitation regarding the amount that may be awarded as punitive damages.

## COUNT II – Trespass to Land (Against All Defendants)

165. Named Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

166. Defendants' intentional, reckless, and negligent conduct caused the uncontrolled discharge of toxic chemicals and debris into the surrounding areas.

167. Named Plaintiffs and Class members have legitimate possessory rights in property affected by the Conyers Plant fire and toxic chemical plume.

168. Defendants' discharge of toxic chemicals and debris invaded the Named Plaintiffs' and Class members' properties.

169. Named Plaintiffs and Class members did not consent to the entry of such materials onto their properties.

170. This intrusion and interference with Named Plaintiffs' and Class members' enjoyment of land is ongoing and constitutes an unreasonable and unlawful trespass that has interfered with their possessory rights, which Named Plaintiffs seek to enjoin.

171. Defendants' trespass has substantially impaired Named Plaintiffs' and Class members' rights to use and enjoy their property, as well as their economic and property values, as alleged herein.

172. As a direct and proximate result of the Defendants' trespass, the Named Plaintiffs and Class members have incurred, and will continue to incur, damages.

These damages include, but are not limited to, real property damage, out-of-pocket expenses, personal property damage, loss of use and enjoyment of property, reduction in property value, loss of business income, loss of business goodwill, annoyance, distress, aggravation, inconvenience, upset, an increased risk of related diseases or illnesses, and the ongoing need for medical monitoring to ensure the early detection of any such diseases or illnesses.

173. The wrongful actions of Defendants constitute bad faith which entitles Named Plaintiffs and Class members to their attorneys' fees and costs of litigation pursuant to O.C.G.A. § 13-6-11.

174. The wrongful actions of Defendants constitute willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences, rendering them liable to Named Plaintiffs and Class members for punitive damages pursuant to O.C.G.A. § 51-12-5.1.

175. Because Defendants acted with the specific intent to cause harm, there is no limitation regarding the amount that may be awarded as punitive damages.

## COUNT III – Public Nuisance (Against All Defendants)

176. Named Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

177. Defendants, as manufacturers, distributors, and suppliers of swimming pool and spa water care chemicals, possessed superior knowledge regarding the properties and dangers of such chemicals, including TCCA. Despite this expertise, Defendants were aware, or in the exercise of reasonable care should have been aware, of the risks of fire and hazardous chemical reactions arising from the improper handling and storage of TCCA and other combustible materials.

178. Defendants knew or should have known of the risk that a fire at the Conyers Plant would result in the release of toxic smoke and debris into the surrounding neighborhood and communities.

179. Defendants owed Named Plaintiffs and Class members a duty to operate the Conyers Plant in a manner that would not cause Named Plaintiffs and Class members injury or harm.

180. In allowing toxic chemicals and debris to escape into the Class Area through their reckless and negligent conduct or omissions, Defendants interfered with public health, safety, peace, comfort, and convenience.

181. The public has not participated in the creation of Defendants' public nuisance.

182. Defendants' intentional, reckless, and negligent conduct caused, and continues to cause, harm, mental distress, and financial loss to Named Plaintiffs and Class members, which disrupt Named Plaintiffs' and Class members' daily lives.

183. Defendants' intentional, reckless, and negligent conduct caused, and continues to cause, substantial interference with Named Plaintiffs' and Class members' ability to enjoy and use their properties and neighborhoods, and to carry on their businesses.

184. As a direct and proximate cause of the nuisance created by Defendants' conduct, Named Plaintiffs and Class members have incurred, and will continue to incur, monetary damages arising from property damage and loss of use of their property.

185. The damages suffered by Named Plaintiffs and Class members who were forced to evacuate or shelter-in-place are special damages that create a private right of action.

186. The damages suffered by Named Plaintiffs and Class members arising from property damage and loss of use of their property are special damages that create a private right of action.

187. The fact that Named Plaintiffs and Class members have suffered similar special damages does not convert their special damages into the nature of public damages.

188. Defendants have failed to remove the toxic chemicals and debris from the property of Named Plaintiffs and Class members.

189. The wrongful actions of Defendants and ongoing consequences of the Conyers Plant fire warrant injunctive relief to abate the nuisance.

190. The notorious history of fires and toxic releases at the Conyers Plant demonstrates that the Conyers Plant fire is not a one-time occurrence.

191. The notorious history of fires and toxic releases at the Lake Charles Plant demonstrates that the Conyers Plant fire is not a one-time occurrence.

192. The notorious history of fires and toxic releases at the Conyers Plant demonstrates that the Conyers Plant is an ongoing nuisance that requires abatement.

193. As a direct and proximate cause of the nuisance caused by Defendants' conduct, Named Plaintiffs and Class members have incurred, and will continue to incur, damages, including but not limited to, real property damage, out-of-pocket expense, personal property damage, loss of use and enjoyment of property, diminution in property value, loss of business income, loss of business goodwill, annoyance, upset, aggravation, inconvenience, an increased risk of

associated disease or illness, and the present need for medical monitoring to ensure early detection of any such disease or illness.

194. The wrongful actions of Defendants constitute bad faith which entitles Named Plaintiffs and Class members to their attorneys' fees and costs of litigation pursuant to O.C.G.A. § 13-6-11.

195. The wrongful actions of Defendants constitute willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences, rendering them liable to Named Plaintiffs and Class members for punitive damages pursuant to O.C.G.A. § 51-12-5.1.

196. Because Defendants acted with the specific intent to cause harm, there is no limitation regarding the amount that may be awarded as punitive damages.

**COUNT IV – Ultrahazardous Activity/Strict Liability**
**(Against All Defendants)**

197. Named Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

198. Defendants are engaged in an ultrahazardous activity in the manufacture, processing, and storage of chlorine and other hazardous chemicals.

199. The manufacture, processing, and storage of highly toxic and combustible chemicals is abnormally dangerous and cannot be made safe by the exercise of the utmost care.

200. Defendants' manufacture, processing, and storage of these toxic and hazardous chemicals was the direct and proximate cause of the chemical fire and toxic chemical plume.

201. Defendants are strictly liable for any and all damages which may occur or arise out of manufacture, processing, and storage of chlorine and other hazardous chemicals regardless of their standard of care.

202. The ultrahazardous nature of Defendants' conduct is evident in the history of repeated chemical fires at the Conyers Plant, and other Bio-Lab facilities around the country, caused when water-reactive chemicals came into contact with water.

203. The harm to Named Plaintiffs and the Class members was and is the kind of harm that would be reasonably anticipated based on the normal risks created by manufacturing, processing, and storing hazardous chemicals in close proximity to residential, commercial, and agricultural areas.

204. As a direct and proximate cause of Defendants' manufacturing and storage of ultrahazardous materials, Named Plaintiffs and Class members have incurred, and will continue to incur, damages, including but not limited to, real property damage, out-of-pocket expense, personal property damage, loss of use and enjoyment of property, diminution in property value, loss of business income, loss of business goodwill, annoyance, upset, aggravation, inconvenience, an

increased risk of associated disease or illness, and the present need for medical monitoring to ensure early detection of any such disease or illness.

205. The wrongful actions of Defendants constitute bad faith which entitles Named Plaintiffs and Class members to their attorneys' fees and costs of litigation pursuant to O.C.G.A. § 13-6-11.

206. The wrongful actions of Defendants constitute willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences, rendering them liable to Named Plaintiffs and Class members for punitive damages pursuant to O.C.G.A. § 51-12-5.1.

207. Because Defendants acted with the specific intent to cause harm, there is no limitation regarding the amount that may be awarded as punitive damages.

## REQUEST FOR RELIEF

**WHEREFORE**, Named Plaintiffs, individually and on behalf of the other Class members, respectfully request that this Court:

1) Issue an order certifying this action as a Class action pursuant to Rule 23 of the Federal Rules of Civil Procedure in the manner described above;
2) Issue a Class-wide judgment holding Defendants liable for the reasons described above for their unlawful conduct causing Named Plaintiffs and class members to sustain damages resulting therefrom;

3) Award Named Plaintiffs and class members compensatory damages in an amount that is fair, just, and reasonable, to be determined at trial;

4) Award Named Plaintiffs and class members punitive damages in an amount that is fair, just, and reasonable, to be determined at trial;

5) Establish a medical monitoring fund;

6) Award interest to Named Plaintiffs and class members as permitted by law;

7) Award reasonable attorneys' fees and costs of suit;

8) Order equitable, injunctive, and declaratory relief to enjoin the trespass and/or abate the nuisance by requiring Defendants to, among other things:

   (a) Install effective automated fire suppression systems throughout the Conyers Plant;

   (b) Provide all local residents with particulate masks;

   (c) Provide all local residents with high-efficiency particulate air filters for their homes;

   (d) Conduct immediate testing and sampling of the air and groundwater to detect the presence of toxins and other chemicals potentially hazardous to human health;

   (e) Immediately and publicly disclose all information regarding the toxins and other compounds that comprised the plume;

(f) Institute perimeter particulate matter monitoring at the fence line of the Conyers Plant; and

(g) Install area air quality monitors in all affected areas inside and outside the Conyers Plant;

(h) Provide a full cleanup of all affected residences, businesses, and common areas;

(i) Wash the exterior of buildings in all affected areas; and

(j) Wash the streets and sidewalks in all affected areas;

9) Order equitable, injunctive, and declaratory relief requiring Defendants to provide alternative housing for residents in affected surrounding communities for the duration of the cleanup process.

10) Order equitable, injunctive, and declaratory relief requiring Defendants to conduct a Process Hazard Analysis of all aspects of the handling and storage of the chemicals present at the Conyers Plant and make the results of the analysis (including recommendations for action) available to the public.

11) Any and all additional relief that the Court deems just and proper.

## JURY DEMAND

Named Plaintiffs, individually and on behalf of the other proposed class members, demand a trial by jury on all issues herein so triable pursuant to Fed. R. Civ. P. 38.

Respectfully submitted this 16th day of September 2026.

*/s/ Nik Erramilli*
Nik Erramilli
Georgia Bar Number 167581
Counsel for Plaintiffs

3350 Northlake Pkwy NE #33
Atlanta, GA 30345
(650) 503-9314 (telephone)
(678) 666-1300 (fax)
Nik@ErramilliLawGroup.com (email)

*/s/ Max Richardson Jr.*
MAX RICHARDSON Jr.
Georgia Bar No. 604080
Counsel for Plaintiffs

2024 Beaver Ruin Road
Norcross, GA 30071
770-209-7999
MaxRichardsonLaw@gmail.com